CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAR 11 2013

JULIA C. DUDLEY, CLERK
BY:
/s/ Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| DAVID E. BANE, | Civil Action No. 7:12cv00529 |
| Appellant, | |
| v. | MEMORANDUM OPINION |
| U.S. TRUSTEE, | By: Samuel G. Wilson |
| Appellee. | United States District Judge |

This is an appeal by the Chapter 7 debtor, David E. Bane, pursuant to 28 U.S.C. § 158(a)(1), from an order of the bankruptcy court denying Bane a discharge because that court found that Bane transferred property with the intent to defraud his creditors and the United States Trustee in violation of 11 U.S.C. § 727(a)(2) and that he had knowingly made, fraudulent false oaths regarding material facts by failing to disclose assets on his bankruptcy schedules in violation of § 727(a)(4)(A).[1] Essentially, Bane asserts that the bankruptcy court's findings of fraudulent intent are clearly erroneous. This court concludes that there is ample evidence to support the bankruptcy court's finding that Bane transferred property with intent to defraud his creditors and the United States Trustee. Because that finding alone is sufficient to deny Bane a discharge, the court does not reach the bankruptcy court's other findings and affirms the

---

[1] 11 U.S.C. § 727(a)(2) provides, in pertinent part, that
[t]he court shall grant the debtor a discharge, unless the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred . . . or has permitted to be transferred . . . property of the debtor, within one year before the date of the filing of the petition or property of the estate, after the date of the filing of the petition.
11 U.S.C. § 727(a)(4)(A) provides, in pertinent part, that "[t]he court shall grant discharge unless the debtor knowingly and fraudulently, or in connection with the case, made a false oath or account."

judgment.²

## I.

Bane's closely held corporation, Aequitas-Energy, Inc., purchased over fifty acres of land in Roanoke, Virginia (known as the "Angel Lane Property") from his mother, Martha Bane, for $400,000. Bane later obtained a loan from Community Trust Bank ("the bank"), secured by a properly recorded deed of trust on the Angel Lane Property. The loan went into default and the bank scheduled a foreclosure sale for July 2, 2010. The day before the scheduled foreclosure sale, Bane executed deeds transferring the Angel Lane Property to himself, and on the day of the sale, filed bankruptcy under Chapter 7, which had the effect of staying the foreclosure. Bane later voluntarily dismissed that Chapter 7 case.

The bank rescheduled the foreclosure sale for the Angel Lane Property for January 24, 2011. On December 31, 2010, Bane executed a deed transferring ninety percent of the Angel Lane Property to his mother for ten dollars in consideration. In the interim, an offer to purchase the property fell through, and Bane had the deed transferring ninety percent of the Angel Lane property to his mother notarized on January 21, 2011. Later that afternoon, the deed was recorded in the Roanoke County Clerk's Office, and shortly after 5 p.m. on that same day, Bane filed his current bankruptcy case under Chapter 7. Bane did not disclose his transfer in his statement of financial affairs. The Trustee's investigation, however, revealed the transfer as well as other undisclosed matters. These events led the Trustee to file a complaint pursuant to 11 U.S.C. §§ 727(a)(2) and 727(a)(4)(A) to deny Bane's Chapter 7 discharge.

---

² As "the provisions of § 727(a) are phrased in the disjunctive[, p]roof of conduct satisfying any one of the sub-sections is enough to justify a denial of a debtor's request for a discharge." Farouki v. Emirates Bank Int'l, 14 F.3d 244, 249(4th Cir. 1994). Because this court affirms the bankruptcy court's § 727(a)(2) findings, it need not reach the bankruptcy court's § 727(a)(4)(A) findings.

2

In the resulting adversary proceeding, Bane asserted his Fifth Amendment privilege and did not testify. Bane's brother testified that they designed the transfer of the Angel Lane Property to "protect their mother." Bane argued that although he had indeed executed a quitclaim deed in his mother's name in case the offer to purchase the property had gone through as planned on January 20, 2011, he never delivered that deed to his mother. Rather, Bane asserted that his brother found the deed at their mother's home, assumed the January 20th sale would occur and that Bane would not file for bankruptcy, and then filed that deed without Bane's knowledge. Bane did not argue that the Angel Lane Property was not his property at the time it was transferred, nor did he argue that the transfer did not take place during the year preceding his filing of a Chapter 7 bankruptcy petition.

After hearing the evidence, the bankruptcy court found that Bane's transfer of ninety percent of the Angel Lane Property to his mother pursuant to the December 31, 2010, deed constituted grounds to deny discharge under § 727(a)(2)(A), which provides for denial of discharge of a debtor who, "with intent to hinder, delay, or defraud a creditor or an offer of the estate charged with custody of property under this title, has transferred . . . or has permitted to be transferred . . . property of the debtor, within one year before the date of the filing of the petition."[3] The bankruptcy court also found that Bane intended to defraud his creditors by failing to disclose assets, judgments, and other matters on his bankruptcy schedules, financial statements, and during testimony at the meeting of creditors.[4]

---

[3] Bane offers two general explanations for why he did not disclose the alleged liabilities and assets: "mistakes are made in bankruptcies," and he relied upon his counsel when filing his bankruptcy petition. The court notes that Bane asserted his Fifth Amendment privileges and did not take the stand, and he filed no exhibits to support his explanation that he relied on his previous counsel. Nor did Bane call that attorney to testify concerning the non-disclosed property, judgments, and claims. (Decision and Order 3, ECF No. 116.)

[4] The bankruptcy court found that Bane knowingly and fraudulently omitted the following items from his schedule of assets: (1) Bane and his sister's judgment against Howard Payne for over $5,000; (2) personal property contained in a Louisiana storage facility that Bane claims he discovered to be missing after he filed his schedule of

3

## II.

Bane argues that he did not intend to defraud when he transferred the Angel Lane Property to his mother in the hours preceding his Chapter 7 petition. The question of intent, however, is a factual inquiry, and the bankruptcy court did not clearly err in finding fraudulent intent.

In reviewing a bankruptcy court's decision, this court reviews findings of fact for clear error. In re Meredith, 527 F.3d 372, 375 (4th Cir. 2008). Specifically, "[f]indings of fact . . . shall not be set aside unless clearly erroneous, and due regard shall be given to the bankruptcy court to judge the credibility of the witnesses." Fed. R. Bankr. P. 8013. A finding of fact is only clearly erroneous if, after review of the record, the reviewing court formulates a firm and definite conviction that an error has been committed. See Klein v. PepsiCo, Inc., 845 F.2d 76, 79 (4th Cir. 1988) (although a reviewing court may disagree on the other court's characterization of the facts, "that does not amount to a firm and definite conviction" of error). Reviewing courts typically defer to the bankruptcy court's conclusions when the bankruptcy court's account of the evidence is plausible in light of the record viewed in its entirety. Anderson v. Bessemer City, 470 U.S. 564, 573–74 (1985).

Reviewing the record in its entirety, the court finds the bankruptcy court's conclusion plausible that Bane acted with actual intent to defraud his creditors. The timeline of events leading up to the transfer of the Angel Lane Property establishes that Bane transferred ninety percent of that property mere hours before filing his Chapter 7 petition, well within the one-year moratorium on such transfers. This transfer bore common badges of fraud, including a lack of

---

assets on January 21, 2011; (3) Bane's beneficial interest in the Martha Harrison Bane Irrevocable Trust (which he now disputes to have no interest in the trust and even if he did, his interest would be worth nothing); and (4) a judgment held against him by V&V Land Management in the amount of $25,000. On appeal, Bane challenges the admission of these exhibits. Bane did not object to these exhibits and was not prejudiced by their inclusion; nor do these exhibits bear on the court's resolution of this appeal pursuant to 28 U.S.C. § 158(a)(1).

4

consideration for the transfer of the property from Bane to his mother, the close familial relationship between the parties, and Bane's retention of a partial interest in the property allowing him continued use of that property. See Zanderman, Inc. v. Sandoval (*In re* Sandoval), No. 96-2391, 1998 WL 497475 at *2 (4th Cir. Aug. 10, 1998) (discussing factors that give rise to a presumption of fraudulent intent).[5] These facts are sufficient to support the bankruptcy court's conclusion that Bane intended to defraud his creditors. Accordingly, the court affirms the bankruptcy court's judgment.

### III.

For the reasons stated, the court affirms the judgment of the bankruptcy court.[6]

**ENTER:** March 8, 2013.

UNITED STATES DISTRICT JUDGE

---

[5] To establish intent, the party seeking the denial of discharge must prove actual, as opposed to constructive, intent to defraud; "[g]iven the practical difficulty of mounting direct evidence of the debtor's intent, few cases turn on such proof," and courts instead may infer actual intent from the facts and circumstances surrounding the transfer. Desmond v. Varasso (*In re* Varrasso), 37 F.3d 760, 764 (1st Cir. 1994); see also Jalajel v. Pugsley, No. 1:11cv163, 2011 WL 1348312, at *1 (E.D. Va. Apr. 8, 2011) (stating that "[f]raudulent intent can be inferred from circumstantial evidence."). Looking to the circumstances surrounding the transfer, courts have identified several objective indicia that, taken together, strongly indicate fraudulent intent. Those indicia include
> (1) the lack of consideration for the transfer; (2) a family relationship between the parties; (3) some retention by the debtor of the use of the property; (4) the debtor's financial condition at the time of transfer; (5) the existence of a pattern or series of transactions after the onset of financial difficulties or threat of suit by creditors; or (6) a suspicious chronology of events.

Zanderman, Inc. v. Sandoval (*In re* Sandoval), No. 96-2391, 1998 WL 497475 at *2 (4th Cir. Aug. 10, 1998); see also Salomon v. Kaiser (*In re* Kaiser), 722 F.2d 1574, 1582–83 (2d Cir. 1983) (discussing the same "badges of fraud" enumerated in Sandoval).

[6] The court dispenses with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.